Davis, J.,
delivered the opinion of the court:
Plaintiff’s intestate, George L. Davis, was commissioned, a pay inspector in the Navy March, 1871. In October, 1880, a board of naval surgeons was convened in accordance with statutory provisions, to examinehim for promotion, and they reported him physically qualified to perform his duties at sea, and recommended him for promotion. He also went before a board *444 of officers to be examined in respect to his mental, moral, and professional fitness to perform all his duties at sea, and that board, the 13th of January, 1881, made an adverse report.
This report was based upon Davis’s record as an officer from the time he became a pay inspector. This record showed, among other things not necessary to be repeated in this opinion, that he had, by court-martial, in December, 1878, been found guilty of certain charges, and sentenced “ to be suspended from , rank and duty on one-half of the leave pay of his grade until the 10th day of August, 1885 (or so long as he remains on the active list of the Navy), and during such period of suspension he shall retain his present rank in the Pay Corps of the Navy. That is to say, he shall not be advanced on the Navy Register in consequence of any vacancy above his position.” Before the expiration of this sentence the time arrived for Davis’s promotion to the rank of pay director. He (June 25,1880) sent a communication to the Secretary of the Navy stating that he was “physically disqualified to perform active duty,” and asking that a medical board might be appointed “ to determine upon [his] my retirement.” A medical board was ordered and Davis was found to beas claimed, incapacitated for the performance of his duties by reason of a disease contracted “ in the line of duty,” whose probable duration was “ considered permanent.” Seven days after the date of this finding by the medical board, that is July 7, 1880, the Secretary of the Navy wrote Davis as follows:
“ The unexecuted portion of the sentence of the general court-martial before which you were tried December 11, 1878, * * * is hereby remitted.”
The same day Davis was ordered before a retiring board, which found that he was “ incapacitated from active service” for reasons stated by them; they added that the incapacity was “ not the result of an incident of the service.” He was then ordered before another retiring board, which, November 9, 1880, found him not incapacitated for active service. Finally he was ordered before the examining board to be examined for promotion. This board in its findings rehearses very fully the facts we have outlined, with others similar in character, as to which it made this statement: “The board cites the foregoing summary of the records concerning the candidate, and directs that it be entered upon the record as part of the minutes, as having a spe- *445 ciñe and material bearing upon the case, especially as touching the question of his mental, moral, and professional fitness” for promotion, and they then certified that he had “not the mental, moral, and professional qualifications to perform efficiently all the duties of a naval officer in a higher grade, and we do not recommend him for promotion.”
Davis protested to4he board against the finding. The President approved the proceedings and findings of the examining boards, and Davis was thereupon retired from active service. It is alleged that the findings of the board were illegal, as. based entirely upon incompetent evidence, and therefore that the retirement was void. Upon this ground plaintiff asks judgment for $2,318.37, being the difference between the pay of an inspector on the active list and that of an inspector upon the retired list.
Plaintiff relies upon the Act of June 18, 1878 (Supp. Eev.. Stat., ch. 267, p. 367, and 20 Stat. L., 165), which provides:
“ That hereafter in the examination of officers in the Navy for promotion no fact which occurred prior to the last examination of the candidate whereby he was promoted, which has been inquired into and decided upon, shall be again inquired into, but such previous examination, if approved, shall be conclusive, unless such fact continuing shows the unfitness of the officer to perform all his duties at sea.”
The examining board was thus prohibited from inquiring into any fact which occurred “ prior to the last examination of the candidate, whereby he was promoted.” In this case the examining board did not, so far as appears here, consider any such fact. Everything which appears in the record occurred after-Davis became a pay inspector in the course of an examination which was to determine his fitness for promotion from, that rank.
The board was charged with the duty of examining into his-mental, moral, and professional qualifications for advancement. What better evidence could it have of these qualifications than the candidate’s actual career in his then grade. It was natural and proper for the board to look into his record. If a good officer, he would proudly rely upon it and demand its examination as a right. The limit placed by Congress upon the scope of inquiry was that past issues, old charges, once inquired into-by competent authority, decided upon and the decision ap *446 proved, should not be reopened. When promoted to the grade of pay inspector Davis’s record as paymaster had been investigated by an examining board and passed upon. The finding had been approved. The statute holds that decision to be final; it closes forever, so far as examining boards are concerned, one period of the officer’s professional career, unless a “ fact continuing shows the unfitness of the officer to perform all his duties at sea.” But the statute goes no further. It does not take away from the meritorious officer the right to produce his record of faithful, diligent, and gallant service in the rank in which at the time he is serving, as proof of fitness for advancement to higher dignity and greater responsibilities; nor does it take away from the naval service the right to examine into that record for the purpose of promoting meritorious officers and of denying advancement to those who have failed to reach the standard of competency aud trustworthiness demanded from all officers in this dignified and honorable career.
That this was the intention of Congress is further shown by sections 1499 and 1502 of the Revised Statutes. The first of these authorizes the board “ to take testimony and to examine all matters on the files and records of the Navy Department relating to any officer whose case may be considered by them.” The second directs the board to send to the President, with the whole record and the finding, “ any matters on the files and records of the Navy Department touching each case may, in the opinion of the board, be necessary to assist them in making up their judgment. ” The following section, 1503, also refers to an examination “of the records of the Navy Department in his case.”
These statutes opened up the whole past life of an applicant for promotion, and made him liable at each step in his career to a fresh investigation, long after the event, of. charges before “inquired into and decided upon.” To remedy any injustice this may have caused, probably, the statute of June 18, 1878, was passed. This statute places a bar in the way of a new examination into old accusations or facts, and starts the officer in his higher grade with a clean record, unless the fact be a continuing one, showing the candidate’s unfitness to “ perform all his duties at sea.” But the act goes no further; it leaves the examining board otherwise subject to the -mandates of section 1499 of the Revised Statutes, which, thus limited, au *447 thorizes an examination of the files and records of the Navy Department concerning the officer’s career in the grade from which he is at the time seeking promotion. Another point made in plaintiff’s behalf is founded upon section 1505 of the Revised Statutes, which provides that—
“ Any officer of the Navy on the active list below the grade of commander who, upon examination for promotion, is not found professionally qualified, shall be suspended from promotion for one year, with corresponding loss of date, when he shall be re-examined, and in case of his failure upon such reexamination he shall be dropped from the service.”
In the first place it is urged that while a pay inspector has the relative rank of commander (§ 1475, Rev. Stat.), yet he is not . actually a commander, but occupies a position somewhat below -that grade. In support of this contention plaintiff cites an opinion of the Attorney-General (16 Ops. Att. Gen., 414) and the case of Hunt v. The United States (14 Wall., 550, and 8 C. Cls. R.., 9). In our view of the statute the distinction does not seem important to the decision of this cause, and we express no opinion about it.
The statute authorizes a re-examination, after the lapse of a year, of a candidate not found “ professionally qualified,” and of such a candidate only. To give to the statute the meaning desired by plaintiff would import into it the words “ mentally and morally,” so it would read “ mentally, morally, and professionally ” qualified. No canon of interpretation authorizes this course, which would defeat what seems to us the plain intent of Congress.
That' Congress omitted the words “ mentally and morally” advisedly from this section is -shown by the other statutory provisions relating to promotions and advancement, which are found in sections 1493-1510 ofthe Revised Statutes. After directing, in section 1496, a physical examination, it is provided that no officer of certain grades shall be promoted “ until his mental, moral, and professional fitness to perform all his duties at sea have been established.” The next section, 1497, which relates to the promotion of a commodore, requires that his “mental, moral, and professional fitness’’shall be established. Section 1504 prescribes the certificate demanded of the board of examiners; it reads as follows: “We hereby certify that -has the mental, moral, and professional qualifications,” *448 etc. The next section, 1505, is the.one already quoted, which provides a re-examination of those “ not found professionally qualified.”
The reason of the rule is obvious. In one year the mental ability does not materially change; in oneyear the moral character is not apt to materially improve. An officer is a man of formed character, responsible for his general mental attitude and moral attributes.
The best officer may, by misfortune simply, fail to fulfill the demands of a strictly technical examination. Absence on active and perilous duty in the line of his profession may have prevented access to books or opportunity for study. To such an officer the statute accords a second trial, which it denies to one whose general mental and moral character is found to fall' below the demands of responsible station.
Petition dismissed.